Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in The U.S. DISTRICT COURT at Seattle, Washington.

August 28, 20.02

BRUCE RIFKIN, Clerk

By _____ Deputy

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>EARNEST JAMES UJAAMA,<br>    a/k/a Bilal Ahmed,<br>    a/k/a Abu Samayya,<br>    a/k/a James Earnest Thompson,<br>    a/k/a Abdul Qaadir,<br><br>    Defendant. | NO. CR02 0283R<br><br>INDICTMENT<br><br>CR 02-00283 #00000001 |

The Grand Jury charges that:

## COUNT ONE

(Conspiracy to Provide Material Support and Resources)

A. INTRODUCTION

1. As used in this Indictment, "Al Qaida" is the foreign terrorist organization that was designated as such, effective October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act, and is also known as "the Base," the Islamic Army, the World Islamic Front for Jihad Against Jews and Crusaders, the Islamic Army for the Liberation of the Holy Places, the Usama Bin Laden Network, the Usama Bin Laden Organization, the Islamic Salvation Foundation, and the Group for the Preservation of the Holy Sites.

2. As used in this Indictment, "jihad" is an Arabic word meaning "holy war," in this context, the taking of actions against persons or governments that are deemed to be enemies of a fundamentalist version of Islam, including destruction of property and loss of life.

3. As used in this Indictment, "bayaat" is an Arabic word meaning an "oath of loyalty" that one person pledges to another.

4. During the times relevant in this Indictment, unindicted coconspirator #1 resided in London, England.

5. During various times relevant in this Indictment, EARNEST JAMES UJAAMA (hereinafter, "UJAAMA"), whose birth name was James Earnest Thompson, and who also has used and adopted the names Bilal Ahmed, Abu Samayya, and Abdul Qaadir, visited and resided in London, England; and visited and resided in Seattle, Washington.

B. OBJECT OF THE CONSPIRACY

6. Beginning at a time uncertain, but no later than the fall of 1999 and continuing through the present, in the Western District of Washington and elsewhere, EARNEST JAMES UJAAMA, a/k/a Bilal Ahmed, a/k/a Abu Samayya, a/k/a James Earnest Thompson, a/k/a Abdul Qaadir ("UJAAMA"), did knowingly conspire, combine, confederate, and agree together with other persons known and unknown to the Grand Jury, within the jurisdiction of the United States, to

   (a) provide material support and resources, that is, training, facilities, computer services, safehouses, and personnel, to Al Qaida, a designated foreign terrorist organization, in violation of Title 18, United States Code, Section 2339B; and

   (b) provide material support and resources, that is, training, facilities, computer services, safehouses, and personnel, knowing and intending that they were to be used in preparation for and in carrying out a conspiracy to destroy property and murder and maim persons located outside the United States, in violation of Title 18, United States Code, Sections 2339A and 956.

## C. PURPOSE OF THE CONSPIRACY

7. The purpose of the conspiracy was to offer and provide facilities in the United States of America for training of persons interested in violent jihad; to provide safehouses in the United States of America for the conspirators; to recruit persons interested in violent jihad and jihad training; to provide actual training of such persons in firearms, military and guerilla tactics, and related activities; and to sponsor partially trained personnel for further violent jihad training and operations coordinated by Al Qaida, in order to assist such persons and groups to promote violent jihad activities around the world.

## D. MANNER AND MEANS OF THE CONSPIRACY

8. It was a part of the conspiracy that UJAAMA pledged and maintained bayaat to unindicted coconspirator #1.

9. It was further a part of the conspiracy that UJAAMA expounded and advocated the statements, writings, and beliefs of unindicted coconspirator #1 concerning the need to engage in violent jihad through armed acts of aggression against Western governments and other governments not adhering to fundamentalist Islamic principles as interpreted by unindicted coconspirator #1, in an effort to persuade persons to meet unindicted coconspirator #1, to recruit persons to pledge bayaat to unindicted coconspirator #1, and to assist in conducting global violent jihad.

10. It was further a part of the conspiracy that UJAAMA, unindicted coconspirator #1, unindicted coconspirator #2, unindicted coconspirator #3, and other persons planned to arrange and conduct training in firearms, military and guerilla tactics, and related activities in the United States of America for persons desiring to engage in global violent jihad.

11. It was further a part of the conspiracy that the conspirators searched for and identified one or more potential sites in the United States to conduct such training.

12. It was further a part of the conspiracy that UJAAMA established one or more World Wide Web sites for unindicted coconspirator #1, through which unindicted

coconspirator #1 espoused his beliefs concerning the need to conduct global violent jihad against the United States of America and other Western nations.

13. It was further a part of the conspiracy that the conspirators planned to provide training in the United States of America to persons desiring to engage in violent jihad so that such persons would be *bona fide* candidates for further violent jihad training in training camps operated by Al Qaida abroad, including in Afghanistan.

14. It was further a part of the conspiracy that unindicted coconspirator #1 would and could provide requisite letters of introduction or sponsorship for such persons for entry into Al Qaida training camps.

E. OVERT ACTS

15. In furtherance of the conspiracy, the following overt acts were committed within the Western District of Washington and elsewhere by one or more conspirators:

   a. During the Fall of 1999, and at other times throughout the conspiracy period, UJAAMA advised others that he was sponsored by unindicted coconspirator #1 and had attended violent jihad training camps, which were operated by Al Qaida.

   b. In or about early October 1999, UJAAMA and other persons, known and unknown to the Grand Jury, traveled from the Seattle, Washington, metropolitan area to a parcel of property in Bly, Oregon, where UJAAMA and other persons engaged in firearms practice.

   c. During October 1999 and November 1999, at Bly, Oregon and at Seattle, Washington, UJAAMA led discussions with other coconspirators concerning the need for further training in order to be able to attend violent jihad training camps in Afghanistan, the commission of armed robberies, the building of underground bunkers to hide ammunition and weapons, the creation of poisonous materials for public consumption, and the firebombing of vehicles.

   d. In or about October 1999, after visiting the property in Bly, Oregon, UJAAMA proposed to unindicted coconspirator #1 the establishment of a jihad training

camp on the Bly property by faxing a proposal from a commercial copy center to unindicted coconspirator #1, which fax, among other things:

   i. compared the terrain of the Bly property to that in Afghanistan;

   ii. stated the Bly property could store and conceal guns, bunkers, and ammunition; and

   iii. invited unindicted coconspirator #1 to stay at the Bly property as a safehouse.

 e. On or about November 26, 1999, unindicted coconspirators #2 and #3, as emissaries of unindicted coconspirator #1, arrived in New York, New York, on an Air India flight, and then traveled to Bly, Oregon, via Seattle, Washington, for the purpose of evaluating the Bly property as a jihad training camp.

 f. In or about late November 1999 and December 1999, unindicted coconspirators #2 and #3 inspected the proposed jihad training camp at the Bly property, they met potential candidates for jihad training, they established security for the Bly property through the use of guard patrols and passwords, and they and others participated in firearms training and viewed a video recording on the subject of improvised poisons.

 g. While at the Bly property, unindicted coconspirator #2 identified himself as a "hit man" for Usama Bin Laden.

 h. In or about December 1999 or January 2000, UJAAMA returned to London, England, where he worked for unindicted coconspirator #1.

 i. In or about February 2000, unindicted coconspirators #2 and #3 resided in Seattle, Washington, where they expounded the writings and teachings of unindicted coconspirator #1, and where unindicted conspirator #2 provided urban tactical training.

 j. Beginning in or about 2000, and continuing through 2001, UJAAMA, using the name Abu Samayya, designed and otherwise participated in the operation of the Supporters of Shariah (SOS) website, which unindicted coconspirator #1 used throughout this time period to advocate violent jihad against the United States of America and other Western nations.

k. During May 2002 and June 2002, unindicted coconspirator #2, the self-described "hit man" for Bin Laden, contacted a cooperating witness and discussed the government investigation and whether he should travel to Seattle to assess the situation.

l. During May 2002 and June 2002, UJAAMA contacted a cooperating witness in an attempt to determine whether another individual who participated in the activities at Bly was cooperating with the government's investigation. UJAAMA told the cooperating witness that he would discuss the matter with others.

All in violation of Title 18, United States Code, Sections 2339B, 2339A, and 956(a)(1) and (b).

## COUNT TWO

(Using, Carrying, Possessing, and Discharging Firearms During a Crime of Violence)

1. The Grand Jury realleges and incorporates by reference paragraphs 1 through 15 of Count 1 of this Indictment.

2. During the Fall of 1999, within the Western District of Washington and elsewhere, EARNEST JAMES UJAAMA did knowingly use, carry, possess, and discharge firearms, during, in relation to, and in furtherance of a crime of violence for which he may be prosecuted in a court of the United States, namely, Conspiracy to Provide Material Support and Resources, as charged in Count 1 of this Indictment.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.

A TRUE BILL:

DATED: 8/28/02

_____
FOREPERSON

_____
JOHN McKAY
United States Attorney

_[signature]_
ANDREW H. HAMILTON
Assistant United States Attorney

_[signature]_
FLOYD G. SHORT
Assistant United States Attorney

_[signature]_
TODD L. GREENBERG
Assistant United States Attorney

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970